IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Milton Lewis, ) | |
| ) | Civil Action No. 6:06-1061-GRA-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| M. Pettiford, Warden, FCI Bennettsville, ) | |
| ) | |
| Defendant. ) | |
| ) | |

The plaintiff, a federal prisoner proceeding *pro se*, seeks relief pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

The defendant filed a motion to dismiss or, in the alternative, for summary judgment on July 3, 2006. By order filed July 5, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On August 4, 2006, the plaintiff filed a response to the motion. The defendant filed a reply brief on August 14, 2006. The plaintiff filed his own motion for summary judgment on July 7, 2006, to which the defendant filed a response on July 25, 2006. The plaintiff filed a reply brief on September 12, 2006.

## **FACTS PRESENTED**

The plaintiff is currently incarcerated at the Federal Correctional Institution, ("FCI") Bennettsville, South Carolina (def. m.s.j., ex. A , SENTRY Sentence Monitoring and Computation Data for Plaintiff, p.1).  He is serving a 168-month term of incarceration imposed by the United States District Court for the Eastern District of North Carolina (*id*., pp. 1-2).  This term was imposed for violations of 21 U.S.C. §§841(a)(1) and 846, Conspiracy and Possession with Intent to Distribute Cocaine and Cocaine Base (def. m.s.j., ex. B, Judgment and Commitment Order dated January 28, 1997).  This sentence was imposed on January 28, 1997 (*id*.).  The plaintiff escaped from custody on December 27, 2002, while he was incarcerated at FPC Pensacola, Florida, and was not returned to custody until February 10, 2005 (def. m.s.j., ex. A, p. 2).  His original term is currently anticipated to be completed on September 15, 2010, via good conduct time release (*id*., p. 2).  Thereafter, he will serve a 27-month consecutive term imposed by the United States District Court for the Northern District of Florida on June 28, 2005, for violation of Title 18, United States Code, Section 751(a), Escape (*id*., p. 3, and def. m.s.j., ex. C, Judgment and Commitment Order dated June 28, 2005).  The plaintiff is anticipated to be released from this second term on August 30, 2012, with Good Conduct Time (def. m.s.j., ex. A, p. 4).

The plaintiff names one defendant in this action, Warden M. Pettiford. Defendant Pettiford is the warden at FCI Bennettsville and was warden during the times relevant to this complaint.  The plaintiff alleges the defendant violated his  constitutional rights with respect to a disciplinary action conducted at FCI Bennettsville.  Specifically, the plaintiff asserts that the disciplinary hearing was held in an untimely manner, that the evidence was insufficient to support a finding that he stole a truck, and that the entire proceeding violated double jeopardy as he has already been convicted in the United States District Court for the same offense.  He seeks to have the disciplinary actions overturned and

compensation of $20 per day for every day he was confined in the Special Housing Unit ("SHU") at FCI Bennettsville.

The facts related to the plaintiff's escape are as follows.  On December 27, 2002, plaintiff was incarcerated at FPC Pensacola, Florida (def. m.s.j., ex. F, Incident Report dated December 27, 2002, §§1-4).  He was assigned to a work detail on the Naval Air Station (def. m.s.j. ex. F, §11).  At approximately 12:00 noon, FPC staff were notified by the Navy Detail Supervisors that the plaintiff was missing (*id.*).  Neither the plaintiff nor the government truck he was driving could be located (*id.*).  An incident report was prepared charging the plaintiff with violations of Code 200 (Escape from an Open Institution) and Code 219 (Stealing) (def. m.s.j., ex. F).  The plaintiff was placed on escape status and notice was provided to law enforcement (def. m.s.j., ex. G ).  When the plaintiff was not immediately located, the incident report was processed *in absentia*, in accordance with Bureau regulations.  *See* 28 C.F.R. §541.17(d) .  The Unit 4 Discipline Committee ("UDC") hearing was held on December 30, 2002, and the matter referred to the Discipline Hearing Officer ("DHO") (def. m.s.j., ex. F, Part II).  The plaintiff could not be provided with notice of his rights before the DHO due to his escape status (def. m.s.j., ex. H, Notice of Hearing and Notice of Rights before the DHO).  The DHO who covered FPC Pensacola conducted the *in absentia* hearing on January 24, 2003 (def. m.s.j., ex. I, Discipline Hearing Report, §I.B). DHO Snyder considered the incident report and a variety of written statements from various Naval personnel and concluded from those statements and the plaintiff's disappearance that he had committed the prohibited acts as charged (def. m.s.j., ex. I, §§III-V).  DHO Snyder determined that sanctions including the loss of good conduct time, disciplinary segregation and a disciplinary transfer were appropriate (def. m.s.j., ex. I, §VI). The report could not be delivered to the plaintiff due to his escape status (def. m.s.j., ex. I, §IX).

Records reflect that the plaintiff was indicted for escape by a federal Grand Jury in the Northern District of Florida on January 21, 2003 (def. m.s.j., ex. J, Declaration of

Roy Lathrop, Paralegal, ¶4). This charge stemmed from the plaintiff's escape from FPC Pensacola on December 27, 2002 (*id.*). The plaintiff was arrested in the Southern District of Florida on February 17, 2005 (def. m.s.j., ex. J, ¶5) and subsequently returned to the Northern District of Florida to answer to the charge (*id.*). The plaintiff made his initial appearance in the Northern District on March 17, 2005, and was ordered to remain in custody pending the disposition of the case (*id.*). On April 20,2005, the plaintiff pleaded guilty to the charges (*id.* ¶6). He was sentenced on June 28, 2005, to a 27-month term to run consecutively to the original cocaine convictions (*Id.*, and def. m.s.j., ex. C, p. 2).

From February 22, 2005, through September 1, 2005, the plaintiff was held in a variety of federal holding facilities pending disposition of the escape charge and transportation to a designated facility for service of sentence (def. m.s.j., ex. J, ¶ 7). He was ultimately designated to FCI Bennettsville and transported to that institution on September 1, 2005 (*id.*). On September 22, 2005, an incident report was prepared at FCI Bennettsville charging the plaintiff with escape from an open institution and stealing (def. m.s.j., ex. K, Incident report dated September 22, 2005). He was given a copy of this document the following day (def. m.s.j., ex. K, §§12-16). An investigation was conducted and the plaintiff was provided the opportunity to make a statement and request witnesses (def. m.s.j., ex. K, Part III). The plaintiff declined to call witnesses, stating that he was already convicted for the escape and that the disciplinary action constituted double jeopardy (*id.*). The matter was referred to the UDC, who conducted an in-person hearing on September 27, 2005 (*id.*, Part II). The plaintiff was provided the opportunity to make a statement, wherein he stated he did not steal the truck and that he had already been sentenced by the court (*id.* §17). The UDC determined that the matter was sufficiently serious as to warrant consideration by the DHO, so they referred the matter (*Id.*, §§18-19). The plaintiff was advised of his rights before the DHO and allowed the opportunity to request witnesses and the assistance of a staff representative (def. m.s.j., ex. L). The plaintiff did not request witnesses (def. m.s.j., ex. L,

4

p. 2).  Although he initially requested a staff representative, the plaintiff later withdrew that request (*id.*).  He initialed this form indicating his waiver of that right (*id.*).  The DHO at FCI Bennettsville conducted an in-person hearing on October 5, 2005 (def. m.s.j., ex. M, Discipline Hearing Report, §I.B).  The plaintiff appeared and was allowed to make a statement (*id.* §III).  The plaintiff expressed regret for his actions but denied stealing the truck, stating it never left the military reservation (*id.*).  He did not present any witnesses or evidence in his behalf (*id.*).  DHO ComStock considered the incident report and a variety of written statements from various Naval personnel and concluded that the plaintiff had committed the prohibited acts as charged (def. m.s.j., ex. M, §§III- V) .  DHO ComStock indicated that the evidence  reflected that the truck was authorized to be in only specific locations on the military reservation and that it was found in an unauthorized area.  DHO ComStock believed this evidence outweighed the plaintiff's denial (*id.* §V).  DHO ComStock determined that sanctions, including the loss of good conduct time, disciplinary segregation and a disciplinary transfer, were appropriate (*id.* §VI).  The report was delivered to plaintiff on October 11, 2005 (*id.* §IX).

Defendant Warden Pettiford testified in his affidavit that he is not generally involved in the inmate discipline process (def. m.s.j., ex. N, Declaration of M. Pettiford, ¶5).  He further testified that he had no involvement in the disciplinary actions taken against the plaintiff in this case (*id.* ¶ 6).

## APPLICABLE LAW AND ANALYSIS

As matters outside the pleadings have been presented by the defendant and have not been excluded by this court, the motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) shall be treated as one for summary judgment pursuant to Rule 56.  *See* Fed.R.Civ.P. 12(b)(6).  Rule 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry

6

of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.  Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The defendant first argues that this court lacks subject matter jurisdiction over the plaintiff's claims against him in his official capacity.  This court agrees.  Section 1983 allows a civil action to recover damages for deprivation of a constitutionally protected right. *Bivens,* 403 U.S. at 395-96.  However, a suit against a federal agency or federal officer in his or her official capacity is actually a claim against the United States.  *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989).  Such a suit lies only where the United States has waived sovereign immunity.  *F.D.I.C. v. Meyer,* 510 U.S. 471, 475 (1994).  The United States has not waived its sovereign immunity for constitutional misconduct.  *See id.* at 477-78.  Accordingly, the doctrine of sovereign immunity shields the United States from suit absent its consent to be sued.  Therefore, this court lacks jurisdiction over the plaintiff's claims against the individual defendant in his official capacity, and those claims should be dismissed.

The plaintiff's action fails on the merits.  The leading case on inmate discipline is *Wolff v. McDonnell*, 418 U.S. 539 (1974).  In *Wolff*, the Supreme Court held that the Due Process Clause is satisfied in prison discipline hearings when the inmate receives a finding from an impartial decision maker, advance written notice of the charges, a conditional opportunity to present documentary evidence and testimony from witnesses, and a written statement of the evidence relied on and the reasons for the disciplinary action.  *Id.* at 564-66.  The Bureau of Prisons' rules embodying disciplinary procedures are codified at 28 C.F.R. § 541.10 *et seq*.  These rules and regulations were drafted to comply with the constitutional requirements of due process in prison discipline matters.

7

The record of the hearing at issue here reflects that the due process requirements of *Wolff* were observed (def. m.s.j., ex. F-M). The plaintiff was not given advance notice of the *in absentia* hearing because he was on escape status. He was, however, given advance written notice of the charges more than 24 hours before the in-person DHO hearing. He was offered the opportunity to present evidence in the form of documents or witnesses and to have the assistance of a staff representative. The plaintiff declined to call witnesses or to utilize a staff representative. The record of the hearings reflects that the plaintiff appeared at the UDC and DHO hearings in 2005 and made a statement to the decisionmaker. The report further reflects the evidence relied upon and the reasons for the decisions and the sanctions imposed, as did the record of the *in absentia* hearings.

The plaintiff's claim that the proceedings were untimely is without merit. The policy of the BOP requires that a disciplinary action be taken *in absentia* at the institution where the inmate was last confined when an inmate is on escape status. 28 C.F.R. §541.17(d). Thereafter, once the inmate is returned to custody, the charges are to be reheard by the DHO "ordinarily within 60 days after the inmate's arrival at the institution to which the inmate is designated after return to custody." *Id.* Here, plaintiff was captured after his escape on February 17, 2005 (def. m.s.j., ex. J ¶5). He did not arrive at his designated institution (FCI Bennettsville) until September 1, 2005 (*id.* ¶7). His in-person disciplinary actions were started 21 days later (on September 22), with the re-issuance of the incident report (def. m.s.j., ex. K). The DHO hearing was held on October 5, 2005, well within the 60-day time frame (def. m.s.j., ex. M).

In *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445 (1985), the Supreme Court set out the constitutional evidentiary standard to be used when courts review prison discipline decisions. It held that the Due Process Clause is satisfied if there is "some evidence" to show that the inmate committed the offense. *Id.* at 455. The

8

Court declined to adopt a more stringent evidentiary standard as a constitutional requirement, stating:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Id.* at 456. The "some evidence" standard is a lenient one, requiring no more than "a modicum of evidence," and is met if there is any evidence in the record that could support the board's decision. *Id.* at 455-56. This standard requires "only that the decision not be arbitrary or without support in the record." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). As the Supreme Court noted in *Hill*,

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

472 U.S. at 455-56. Upon review of a disciplinary proceeding, the court should determine only whether the DHO's decision to revoke good time credits has some factual basis. *Hill*, 472 U.S. at 456; *McPherson*, 188 F.3d at 786.

Review of the records of the disciplinary action at issue in this case reveals that there was "some evidence" to support the DHO's decision (resp. m.s.j., ex. I, M). Both DHOs detailed the evidence they relied upon, which included the statements of various witnesses as well as the written report of each incident. DHO ComStock explained that she found the evidence that the truck was in an unauthorized area to be more convincing than the plaintiff's bald statement that he did not steal the truck. Based upon the foregoing, the claim fails.

9

The plaintiff next claims that he was subjected to double jeopardy because he was prosecuted criminally for the escape and was subjected to discipline by the prison authorities for the same wrongful behavior. The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb …" U.S. Const. Amend. V. The clause consists of three separate constitutional protections. It protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717(1969). This "does not prohibit the imposition of all additional sanctions that could, 'in common parlance,' be described as punishment." *Hudson v. United States*, 522 U.S. 93, 98-99 (1997). "The Clause protects only against the imposition of multiple criminal punishments for the same offense, and then only when such occurs in successive proceedings." *Id.* at 99 (citations omitted). Only criminal punishment subjects a person to jeopardy within the constitutional meaning. *U.S. ex rel Marcus v. Hess,* 317 U.S. 537, 548-49 (1943).

As argued by the defendant in his motion for summary judgment, numerous courts have considered whether internal prison disciplinary actions are considered "criminal punishment" such that double jeopardy is implicated, and all have held that they are not *(see* def. m.s.j. 17-19) (citing cases). The defendant relies on the Supreme Court's decision in *United States v. Halper*, 490 U.S. 435 (1989), in which the Supreme Court addressed the issue of "whether and under what circumstances a civil penalty may constitute punishment for the purpose of the Double Jeopardy Clause." *Id.* at 446. The Court in *Halper* held that a civil fine could constitute "punishment" for double jeopardy purposes, notwithstanding the civil penalty label, where there was a "tremendous disparity" between the civil penalty and the government's actual damages. *Id.* at 449, 452. Where "the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the

10

Government for its loss," the civil sanction "may not fairly be characterized as remedial, but only as a deterrent or retribution." *Id*. at 449.

However, as argued by the defendant, numerous circuit courts considering the issue subsequent to *Halper* have continued to hold that prison disciplinary sanctions do not preclude criminal prosecution for the same conduct under the Double Jeopardy clause (def. m.s.j. 19) (citing cases). As explained by the Seventh Circuit Court of Appeals:

> Prison administrators must have the ability to discipline a prisoner for violating institutional regulations, and the State must have the ability to prosecute the prisoner for the same conduct at a later date; combining the two proceedings would not be feasible. The prison disciplinary process determines whether the defendant has violated the conditions of his incarceration and is designed to maintain institutional security and order. A criminal prosecution is designed to punish the defendant for a violation of the criminal laws. Because the two proceedings serve different ends, the finding that the defendant no longer merits good time does not foreclose the criminal justice system from punishing the defendant for that conduct.

*Garrity v. Fiedler,* 41 F.3d 1150, 1153 (7th Cir. 1994) (internal quotations and citations omitted). The Seventh Circuit went on to state that "the reasoning and motives behind *Halper* [do not] fit the prison context." *Id*. (internal quotation and citation omitted). A court "cannot depart from a rule uniformly established by federal and state courts simply because dicta in a Supreme Court opinion dealing with facts and issues wholly unrelated to the present dispute, could be read to require a different result." *Id*. (internal quotation and citation omitted).

In 1997, the Supreme Court re-examined the decision in *Halper*. *See Hudson v. United States*, 522 U.S. 93 (1997). The Second Circuit Court of Appeals explains the decision as follows:

> In *Hudson v. United States*, a divided Supreme Court disavowed *Halper*. *Hudson*, 522 U.S. at 102. The Court emphasized that the Double Jeopardy Clause "protects only against the imposition of multiple criminal punishments for the same offense." *Id*. at 99 (emphasis in original). Although identifying

11

"[w]hether a punishment is criminal or civil is, at least initially, a matter of statutory construction," *id.*, the Court found that *Halper* had given insufficient consideration to the text of the statute at issue. *Id.* at 102. *Hudson* instructs courts to ask first "whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other," and second, to inquire whether the statutory scheme is "so punitive in either purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." *Id.* at 99 (internal citations, quotation marks, and alteration omitted). This second inquiry, in turn, is to be resolved by consulting seven factors, originally enumerated in *Kennedy v. Mendoza-Martinez*:

> (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment-retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for *146 it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."

*Hudson*, 522 U.S. at 99-100 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)). *Hudson* cautioned that courts must consider these factors in relation to the facial meaning of the statute and warned that "only the clearest proof" would "override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 100 (internal quotation marks and citation omitted).

*Porter v. Coughlin*, 421 F.3d 141,148 (2nd Cir. 2005) (parallel citations omitted).

As argued by the defendant, consideration of the first prong of the *Hudson* analysis leads to the conclusion that the government intended for the disciplinary regulations to be civil in nature (def. m.s.j. 21-24). While several of the factors relevant to the second inquiry weigh in favor of the argument that the disciplinary sanctions were punitive in nature (def. m.s.j. 24-28), the other factors "so strongly suggest the presence of a legitimate, nonpunitive purpose that we must conclude the sanction was civil in nature." *Porter*, 421 F.3d at 148 (applying *Hudson* to prison disciplinary sanctions and finding them not "criminal"

12

for double jeopardy purposes); *see U.S. v. Mayes*, 158 F.3d 1215, 1222-25 (11th Cir. 1998) (in light of *Hudson*, prison disciplinary proceedings are not criminal for purposes of double jeopardy).

In its only published opinion on this subject, the Fourth Circuit Court of Appeals stated that "[c]riminal prosecution for the crime of escape is not prohibited under the double jeopardy clause of the fifth amendment because a convict guilty thereof has upon his recapture been subjected to discipline by the prison authorities for the violation of prison discipline involved." *Patterson v. U.S.*, 183 F.2d 327, 327 (4th Cir. 1950). This decision has been cited as binding authority in unpublished opinions and was recently reconsidered in light of *Halper*. *See U.S. v. Devaughn*, No. 01-4458, 2002 WL 485725 (4th Cir. 2002). In *Devaughn*, the Fourth Circuit concluded that *Halper* does not require the court to revisit the continuing vitality of *Patterson*, in light of the voluminous precedent from sister circuits which have considered this exact issue after *Halper*. *Devaughn*, 2002 WL 485725, *1. The court concluded that the ruling in *Patterson* was still good law in this circuit. *Id*. Based upon the foregoing, the plaintiff's double jeopardy claim is without merit.

The defendant further claims that he is entitled to qualified immunity. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly

13

established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendant – or anyone else for that matter – violated any of his constitutional rights. Therefore, the defendant is entitled to qualified immunity.

The plaintiff argues in his motion for summary judgment that the defendant's answer was not timely and, therefore, he is entitled to summary judgment. However, a review of the docket shows that the defendant's motion to dismiss or, in the alternative, for summary judgment was filed within 60 days of service of the complaint on the defendant. Accordingly, the motion was timely, and the plaintiff's motion should be denied. *See* Fed.R.Civ.P. 12(a)(3).

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, this court recommends that the defendant's motion for summary judgment be granted and the plaintiff's motion for summary judgment be denied.

January 22, 2007

Greenville, South Carolina

WILLIAM M. CATOE
UNITED STATES MAGISTRATE JUDGE

14